DJW/byk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DENNIS M. LANGLEY,
et al.,

|                  |                  |
|------------------|------------------|
| Plaintiffs,      | CIVIL ACTION     |
| v.               | Case No.  04-2200-DJW |

CHUBB CUSTOM INSURANCE
COMPANY, et al.,

Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Leave to File Third-Party Complaint (doc. 30).  Defendants Chubb Custom Insurance Company ("Chubb") and Pacific Indemnity move the Court to enter an Order granting them leave to file their third party complaint against Max Rieke and Brothers, Inc. ("Rieke").  In support of their motion, Defendants state that the plumbing system which allegedly caused the damages at issue in this case was installed by Rieke.  Plaintiffs oppose the motion, arguing that granting Defendants leave to file their third-party complaint for the sole reason of protecting its subrogation rights complicates the lawsuit and impairs Plaintiffs' rights.  Plaintiffs also claim that Defendants' subrogation interest is already protected in Plaintiffs' state court action against Rieke.  For the reasons set forth below, Defendants' Motion for Leave to File Third-Party Complaint (doc. 30) is granted.

I.      **Background Facts**

In 1999, Plaintiffs Dennis Langley and Quivera Realty, Inc. undertook an extensive project to remodel and improve Langley's property located in Shawnee, Kansas.  A major aspect of the project was the installation of an elaborate swimming pool/water feature, which entailed an

extensive drainage system to control rainwater falling on the house and adjacent property. The swimming pool/water feature consists of a network of man-made pool bogs, connecting streams and a pool. Water in the pool is pumped uphill to the top of a man-made hill through a "pressurized plumbing system," which consists of a network of underground pipes, to a series of pool bogs ending at the top of the hill. The flow of water through the pool bogs naturally purifies the water causing the water in the pool to be clear and free from silt.

The project also entailed a "non-pressurized drainage system" installed around the house and the adjacent property to capture rain and water run-off and discharge it into a natural stream below the pool.

In April 2002, Plaintiffs discovered that pipes had ruptured underground thereby allowing water to escape from the non-pressurized drainage system. Additionally, because construction was not complete on the cap drain/walkway on the south side of the pool, surface rainwater was not contained and washed dirt onto the patio surfaces and into the pool. Plaintiffs submitted claims under insurance policies issued by Defendants for the damages as a result of the non-pressurized drainage system breaches. Defendants refused to reimburse Plaintiffs for these damages.

In July 2002, Plaintiffs learned of a catastrophic failure in the pressurized plumbing system through which water was pumped up to the pool bogs. Pipes had ruptured underground allowing water to escape. The pressure of the escaping water from the pressurized plumbing system caused substantial damage to the surrounding pool bogs, landscaping, driveway, retaining walls, electrical generation structure, and other property. Plaintiffs met with Defendants to discuss the loss and damages as a result of the breach and the options for repairing the ruptured underground pipes. Plaintiffs allege that Defendants represented that the cost of excavation and replacement was

covered under the insurance policies.  Plaintiffs also discussed with Defendants as a potential alternative the internal patching of the breached pipes in lieu of  the expensive excavation and replacement of the pipes.  Plaintiffs claim that Defendants expressed the strong and clear preference for Plaintiffs to use the less certain and less extensive internal patching process in lieu of traditional excavation and replacement.  Plaintiffs thereafter incurred the expenses associated with the internal patching process.  Defendant Chubb paid Plaintiffs $224,594 in connection with the loss, but denied coverage for the internal patching process and sealant.

Plaintiffs filed a breach of contract, misrepresentations, and fraud action against Defendants in the District Court of Johnson County, alleging that Defendants failed to pay damages covered under insurance policies issued to Plaintiffs.  Defendants removed the action to this court on May 10, 2005.

Plaintiffs filed another separate action in the District Court of Johnson County against Rieke, alleging causes of action in negligence and breach of contract.  Plaintiffs' claims in the Johnson County District Court lawsuit are related to Rieke's alleged negligent and defective work installing the underground plumbing systems and for severed electrical lines, damages to the parking apron, and other consequential damages.  Defendants intervened in the Johnson County action to the extent of their $244,594 payment to Plaintiffs on the "pressurized plumbing system" insurance claim.  That action is currently stayed pending the resolution of this case.

Defendants have now filed their Motion for Leave to File Third-Party Complaint against Rieke.

## II.    Applicable Law

Federal Rule of Civil Procedure 14(a) provides that a defending party may serve a third-party

complaint against a person not a party to the action "who is or may be liable to him for all or part of the plaintiff's claim against him."  A third-party claim may be asserted under this rule only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant.[1]  The original defendant's claim against a third-party defendant cannot simply be a related claim or one arising against the same general background, but must be based on the plaintiff's claim of liability against the original defendant.[2]

The granting or denial of leave to a defendant to prosecute a third-party claim rests in the trial court's sound discretion.[3]  In exercising its discretion, the court is mindful that the purpose of Rule 14 is "to accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits. The rule should be liberally construed to effectuate its intended purposes."[4]  Some of the relevant factors for a court to consider when exercising this discretion include: (1) the benefits of a single action versus prejudice to the other party and confusion, (2) the timeliness of the request and prejudice to the plaintiff in delay, (3) whether the main case would unnecessarily expand in scope, (4) whether impleading new parties would unduly delay or complicate the trial, and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of

---

[1] *Bethany Med. Ctr. v. Harder*, 641 F. Supp. 214, 217 (D. Kan. 1986).

[2] *Id. See also United States Fid. & Guar. Co. v. Am. State Bank*, 372 F.2d 449, 450 (10th Cir. 1967).

[3] *First Nat'l Bank of Nocona v. Duncan Sav. & Loan Ass'n.*, 957 F.2d 775, 777 (10th Cir. 1992).

[4] *United States v. Acord*, 209 F.2d 709, 712 (10th Cir. 1954), *cert. denied*, 347 U.S. 975 (1954). *See also Clark v. Assocs. Commercial Corp.*, 149 F.R.D. 629 (D. Kan. 1993) (the court should generally allow impleader of a proper third-party action unless it will result in some prejudice to the other parties).

third-party complaints.[5]

## III.    Discussion

Defendants seek to implead Reike, the company that installed the underground pipes, which allegedly ruptured and thereby caused the damages to Plaintiff Langley's property.  Defendants seek to assert a claim against Reike for the money already paid under the insurance policies issued to Plaintiff Langley and for any damages assessed and expenses.  Plaintiffs object to the motion, arguing that granting Defendants leave to file their third-party complaint impairs their rights under Kansas law, complicates and further delays this lawsuit.  Plaintiffs further argue that Defendants will not be prejudiced by denying the motion because Defendants' subrogation interest is already protected by Defendants intervening in Plaintiffs' state court action against Rieke.

In this case, Defendants may have a right of indemnity from Rieke if they are found liable to Plaintiffs.  "A right of indemnity exists where a party is compelled to pay damages that rightfully should have been paid by another party."[6]  Plaintiffs allege that Defendants failed to pay for damages covered under contracts of insurance.  Therefore, if Plaintiffs prevail against Defendants, Defendants may be entitled to indemnity against Rieke for those damages because Rieke installed the underground plumbing systems that ruptured.  Defendants have thus shown the existence of a claim against Rieke for any liability that Defendants may owe to Plaintiffs.  Defendants have thus pled sufficient facts for them to implead Rieke in this action under Fed. R. Civ. P. 14(a).

_____

[5]*Administrative Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 216 F.R.D. 511, 514 (D. Kan. 2003) (citing *City of Wichita, Kan. v. Aero Holdings, Inc.*, No. 98-1360-MLB, 2000 WL 1480490, at *1 (D. Kan. Apr. 7, 2000)).

[6]*Wandrey v. McCarthy*, 804 F. Supp. 1384, 1386 (D. Kan. 1992) (citing *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 473, 657 P.2d 517 (1983)).

A.      **Whether allowing the third-party complaint impairs Plaintiffs' rights**

Plaintiffs argue that allowing Defendants to file their third-party complaint against Rieke impairs their rights under Kansas law because Defendants are not the proper party to bring a claim against Rieke.  Plaintiffs argue that under Kansas law, Plaintiffs are the proper parties to maintain a suit against Rieke until Plaintiffs are fully reimbursed for their loss. Once Plaintiffs are fully reimbursed for their loss, Defendants then become the real party in interest.  Until that time, Plaintiffs assert that they should have the right to maintain and control the claim against Rieke. They maintain that Defendants should fully reimburse them for their loss if they want to control the claims against Rieke.

Plaintiffs cite the Kansas Supreme Court case, *Ellsaesser v. Mid-Continent Casualty Company,*[7] in support of their argument that they have the right to maintain the action against Rieke until their loss is fully reimbursed by Defendants.  *Ellsaesser* involved an insured's claim for damages arising out of an automobile accident allegedly due to the negligence of the defendant.[8] At a hearing, it was disclosed that all but a small part of the insured's loss had been paid by his insurance company.[9]  The district court entered an order requiring the insurer to either be made a party plaintiff or the action dismissed.[10]  On appeal, the Kansas Supreme Court held that the district court had erred in its order directing plaintiff's insurance company to be made a party plaintiff or

---

[7]195 Kan. 117, 403 P.2d 185 (1965).

[8]403 P.2d at 186.

[9]*Id.*

[10]*Id.*

6

the action be dismissed.[11]  The court cited the long-established rule that "an insured property owner, who has been but partly reimbursed for his loss, is the proper party to bring suit against a third party wrongdoer for the entire loss."[12]

Although *Ellsaesser* held that where a loss is partially covered by insurance, the insured is the proper party to bring suit for the entire loss, the Court finds that this holding does not preclude a defendant insurer, even one who has only partially reimbursed the insured for a loss, from impleading the third-party tortfeasor the insurer claims was responsible for the loss.

### B.    Complication and delay to this lawsuit

Plaintiffs also argue that their claims against Defendants and Defendants' third-party claim against Rieke cannot be tried together.  Plaintiffs contend that Rieke does not have an interest in the outcome of this case and that the cases are completely unrelated.  Plaintiffs argue that allowing the third-party complaint would add an additional layer of complexity to this already complex and potentially confusing lawsuit.  They further argue that mixing the insurance coverage issues of Plaintiffs' claims and the associated representations by Defendant Chubb with the issue of Rieke's allegedly faulty work will cause the trial to be confusing and lengthy.  Plaintiffs assert that the better approach is to allow this case to proceed with only Plaintiffs' claims against Defendants.

The Court determines that allowing Defendants' third-party complaint would not unnecessarily make this case more confusing than any subrogation case.  The Court has rejected similar "complexity" arguments made by a plaintiff in *Clark v. Associates Commercial Corp.*[13]  In that case, plaintiff debtor brought an action against the defendant creditor, alleging that the creditor's

---

[11]*Id*. at 188.

[12]*Id*. at 186.

[13]149 F.R.D. 629, 635 (D. Kan. 1993).

agents committed a breach of peace when repossessing his tractor-trailer unit.[14]  Defendant creditor

then filed a third-party claim for indemnity against its alleged agents.[15]  In response, the plaintiff

argued that the defendant's indemnity claims against the third-party defendants unduly complicated

the original suit.[16]  The court found no merit in plaintiff's arguments that the third-party complaint

would confuse the issues in the case, or that plaintiff would be prejudiced by the third-party

complaint.[17]  Instead, the court held that many of the issues were so closely related that resolution

of the plaintiff's claims might well collaterally estop the defendant from relitigating the issues in a

separate proceeding, to the significant prejudice of the defendant.[18]

In this case, the Court finds that impleading Rieke would serve the judicial economy goals

of accomplishing in one proceeding the adjudication of the rights of multiple parties concerned in

the controversy and preventing the necessity of trying several related claims in different lawsuits.

The judicial economy of trying Defendants' claim against third-party defendant Rieke in this action

outweighs the possibility that impleading Rieke would cause issue confusion or cause the trial to be

confusing and lengthy.

### C.      No prejudice to Defendants

Plaintiffs further argue that Defendants will not be prejudiced by denying the motion because

Defendants' subrogation interest is already protected by Defendants intervening in Plaintiffs' state

court action against Rieke.

---

[14]*Id.*

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]*Id.*

Defendants argue that the issues in their third-party complaint against Rieke are so closely related to Plaintiffs' claims that Defendants are concerned that they could be collaterally estopped from relitigating the issues with Rieke in a separate indemnification lawsuit. Defendants claim that they would be prejudiced in this action were Plaintiffs to dismiss the pending state-court claim against Rieke. Such a result could impair or preclude Defendants' indemnity claims against Rieke.

The Court is persuaded by Defendants' argument that they could be collaterally estopped from relitigating the issue with Rieke in a separate indemnification lawsuit. That possible prejudice, along with the risk of separate lawsuits with inconsistent results, weighs strongly in favor of allowing Defendants to implead Rieke in this action.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Leave to File Third-Party Complaint (doc. 30) is granted. Defendants shall electronically file their Third-Party Complaint within **ten (10) days** of the date of the this Order.

**IT IS FURTHER ORDERED** that within **twenty (20) days** of the date Defendants file their Third-Party Complaint, Defendants shall serve summons and the Third-Party Complaint upon Third-Party Defendant Rieke.

**IT IS FURTHER ORDERED** that a telephone scheduling conference will be set following the filing of responsive pleadings by Third-Party Defendant Rieke.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas, this 2nd day of December, 2005.

s/ David J. Waxse

David J. Waxse
U.S. Magistrate Judge

cc:    All counsel